UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VLADISOV POTAPOV,<br>Petitioner,<br>v.<br>KRISTI NOEM, et al.<br>Respondents. | No. 1:26-cv-01641-DAD-ICD<br><br>ORDER GRANTING PETITIONER'S MOTION TO ENFORCE JUDGMENT; DENYING PETITIONER'S MOTIONS FOR IMMEDIATE DETERMINATION AND FOR A TEMPORARY RESTRAINING ORDER AS MOOT; AND DENYING RESPONDENT'S MOTION FOR CLARIFICATION<br><br>(Doc. Nos 12, 14, 15, 20) |

Petitioner is an immigration detainee who successfully proceeded with counsel on his previously filed habeas corpus petition filed pursuant to 28 U.S.C. § 2241. (Doc. Nos. 1, 10.) On May 28, 2026, the undersigned granted petitioner habeas relief, ordered his immediate release from immigration custody, and enjoined respondents from using the adjustment of status process in which petitioner was then engaged to re-detain petitioner, including at or near any future interview related to petitioner's application for adjustment of status pending before the immigration court. (Doc. No. 10.)

After the issuance of that order, on September 10, 2026, petitioner's counsel filed a motion to enforce the court's May 28, 2026 judgment. (Doc. No. 12.) Respondents filed an opposition to that motion. (Doc. No. 13.) On September 28, 2026, counsel for petitioner filed a motion for an immediate determination on the motion to enforce (Doc. No. 14), as well as another

motion for a temporary restraining order. (Doc. No. 15.) Respondents filed an opposition to petitioner's new motion for a temporary restraining order. (Doc. No. 19.) On October 14, 2026, respondents filed a motion seeking clarification as to whether a transfer of petitioner to Virginia to facilitate obtaining travel documents for his removal to Russia would be a violation of this court's May 26, 2026 no transfer order that was issued in order to preserve the status quo while the court considered petitioner's original motion for a temporary restraining order or whether the no transfer order was no longer in effect as a result of the granting of the habeas petition. (Doc. No. 20.)

Petitioner is a citizen of Russia who arrived in the United States on or about May 31, 2022. (Doc. No. 10 at 2.) He encountered immigration officials but was paroled. (*Id.*) On June 12, 2024, an immigration judge ("IJ") ordered petitioner removed from the United States. (*Id.*) In October 2025, petitioner filed a motion for adjustment of status. (*Id.*) On or about February 9, 2026, petitioner was detained by immigration authorities while attending his adjustment of status interview. (*Id.*)

Petitioner was released by immigration authorities pursuant to the court's May 28, 2026 order but with conditions, including wearing an ankle monitor as well as a requirement that he regularly check-in with immigration officials. (Doc. No. 12 at 1.) On or about September 8, 2026, immigration authorities re-detained petitioner while he was traveling to his scheduled immigration check-in meeting. (Doc. No. 12 at 1.) Petitioner remains in immigration custody at the Desert View Facility in the Central District of California. [1]

Petitioner's motion to enforce the court's May 28, 2026 order granting his release from custody raises several issues. First, petitioner argues that the ankle monitoring and periodic reporting to immigration authorities requirements imposed upon him by immigration authorities upon his release from detention meant that he was never released from custody as ordered by the

---

[1] The court is aware that on October 17, 2026, petitioner filed another habeas petition in the Central District of California challenging his current immigration detention. *See Potapov v. Facility Adm'r Desert Valley Annex, et al.*, 5:26-cv-06161-JFW-PD. However, that pending habeas action is irrelevant for purposes of resolving the question of whether the government failed to comply with this court's May 28, 2026 order that petitioner be released from "custody."

court. (Doc. No. 12 at 1–2) Further, petitioner asserts that he is now entitled to his immediate release because he was not given advance notice and a hearing before a neutral IJ prior to his most recent re-detention by immigration authorities in September 2026. (*Id.* at 12.) Finally, petitioner argues that the fact that he is now detained at a facility located within the Central District of California does not deprive this court of jurisdiction to enforce its May 28, 2026 order. (*Id.* at 7–8.) Petitioner seeks his immediate release from immigration custody and argues that upon his release from custody he be not be required to wear an ankle monitor or be subject to a reporting regime absent advance notice and an opportunity to be heard. (*Id.* at 8–9.)

Respondents raise several arguments in response. (Doc. No. 13.) First, respondents contend that the court's May 28, 2026 order granting petitioner habeas relief is not implicated by petitioner's current detention because petitioner was not re-detained as a result of his engagement in the adjustment of status process. (*Id.* at 2–3.) Next, respondent claims that petitioner's release on conditions that included the requirements that he wear an ankle monitor and report to immigration authorities did not violate this court's May 28, 2026 order because those conditions did not render him in "custody."[2] (*Id.* at 3–4.) Finally, respondent argues that this court lacks jurisdiction because petitioner is now detained in the Central District of California. (*Id.* at 4–5.)

The court will first address the issue of this court's jurisdiction to enforce its prior order. Respondents correctly cite to the decision in *Rumsfeld v. Padilla*, 542 U.S. 426, 446-47 (2004), for the proposition that a petitioner is required to seek habeas relief in the district in which he is confined. However, respondent's reliance on *Rumsfeld* is misplaced under the present circumstances in this case. This court has jurisdiction to enforce its own orders. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A motion to enforce judgment is the "usual method" for requesting that a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. 17-cv-05948, 2020

---

[2] In advancing this argument, however, respondent concedes that these conditions were imposed upon petitioner because he was released from custody under the Intensive Supervision Appearance Program (ISAP) administered by ICE. (Doc. No. 13 at 2.)

WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)). Petitioner is simply asking this court to enforce its judgment that was previously entered in his favor and this court maintains jurisdiction to enforce its previously entered order. *See Rose v. Guyer*, 961 F.3d 1238, 1246 (9th Cir. 2020) ("When a district court issues a conditional habeas writ, it retains jurisdiction to determine compliance.").

In arguing that the court's May 28, 2026 order was complied with and that the conditions imposed on petitioner's release from immigration detention did not render him still in "custody," respondents rely on the decision in *Munoz v. Smith*, 17 F.4th 1237, 1245 (9th Cir. 2021) (concluding in response to a petition brought pursuant to 28 U.S.C. § 2254, that a petitioner convicted in state court of a sex offense involving a minor who was paroled from prison on a lifetime term of supervision with conditions which included electronic monitoring (which did not prevent him from going anywhere) and residency approval and reporting obligations) did not remain "in custody"). However, this same argument advanced by respondent here has recently been considered and rejected by another district court. *M.A.M.G. v. Albarran*, No. 26-cv-06143-RFL, 2026 WL 2547047 (N.D. Cal. Aug. 27, 2026).

In *M.A.M.G.* the petitioner's asserted that ICE's unilateral imposition of ankle monitoring violated their procedural and substantive due process rights under the Fifth Amendment and accordingly sought habeas relief pursuant to 28 U.S.C. § 2241. *Id.* at 1. In addressing the respondents argument that the petitioner were not "in custody" for purposes of seeking habeas relief, the district court stated as follows:

> Courts may grant habeas relief to any individual "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). To be "in custody," the individual does not need to be physically imprisoned; habeas relief is available where the individual is subject to "restraints not shared by the public generally." *Jones* 371 U.S. at 240.
>
> Many courts across the country and within this district have recently found that the combination of measures imposed upon Petitioners together equate to custody. In *Harrington v. Albarran*, Judge Tigar recently collected these cases, finding **"as multiple sister courts have done on similar facts,"** that a requirement to **"appear at particular places and times to comply with ISAP supervision,"** a restriction **"from leaving a radius within Northern California,"** and a requirement to **"wear an ankle monitor around the clock"**

together "satisfy the definition of 'custody.'" No. 26-CV-01889-JST, 2026 WL 800113, at *4 (N.D. Cal. Mar. 23, 2026). Courts within the Central District of California, Southern District of New York, District of Colardo, Eastern District of Pennsylvania, and District of Oregon have all ruled similarly. *See, e.g., Cruz v. Lyons*, No., 2025 WL 3443146, at *3 (C.D. Cal. Dec. 1, 2025) ("the imposition of additional constraints on Petitioner's liberty following her detention, including electronic monitoring, supports a conclusion that she remains in custody."); *Campbell v. Almodovar*, 2025 WL 3626099, at *1 (S.D.N.Y. Dec. 15, 2025) ("any form of re-detention—including electronic monitoring and mandatory reporting—violates Petitioner's due process rights"); *Batz Barreno v. Baltasar*, 816 F. Supp. 3d 1255, 1258 (D. Colo. 2026) ("Petitioner remains in custody through the conditions of release imposed by ICE. ICE's use of a GPS monitor and other measures instead of a ball and chain makes no difference."); N-N-v. McShane, 813 F. Supp. 3d 496, 502 (E.D. Pa. 2025); *A.B.D. v. Wamsley*, 2026 WL 178306, at *8 (D. Or. Jan. 22, 2026). Judge Pitts and Judge Labson Freeman within the Northern District of California have also arrived at similar results. *See Garro Pinchi v. Albarran*, No. 25-CV-10831-PCP, ––– F.4th –––, 2026 WL 1975598, at *3 (N.D. Cal. July 8, 2026) ("the new supervisory conditions imposed on Ms. Garro Pinchi," including ISAP check-ins and travel restrictions, "are likely custodial because they place significant restraints on Ms. Garro Pinchi's physical liberty."); *Ayala v. Albarran*, No. 5:26-CV-03092-BLF, 2026 WL 1179862, at *3 (N.D. Cal. Apr. 30, 2026) ("such conditions as attending regularly scheduled in-person check-ins and reporting via the SmartLINK application's facial recognition technology as well as a GPS ankle monitor ... significantly confine and restrain Mr. Ayala's freedom, and he is accordingly in custody for the purpose of federal habeas jurisdiction." (cleaned up)).

A minority of cases have come out the other way. Respondents rely principally on *Ba v. Lyons*, 2026 WL 218936 (S.D. Cal. Jan. 27, 2026), which declined to find electronic monitoring in combination with location restrictions sufficient to constitute custody pursuant to its reading of *Munoz v. Smith*, 17 F.4th 1237 (9th Cir. 2021). The better reading of *Munoz*, however, supports finding the requirements here to be custodial. In *Munoz*, pursuant to the statutory requirements for supervising convicted sex offenders, the petitioner was required to pay a monthly $30 fee, wear an electronic monitor, reside at an approved location, and inform his parole officer of his current address. 17 F.4th at 1238–39. The Ninth Circuit held that these restrictions were "collateral consequences of conviction, not 'custodial' requirements," largely because they did "not restrict [the petitioner's] movement in any apparent way." *Id.* at 1243, 1245–46. Specifically, the electronic monitoring did not (1) "target[ ] petitioner's movement in order to impose special requirements," (2) "demand his physical presence at any time or place," or (3) "prevent him from going anywhere." *Id.* at 1245 (cleaned up). The residency and reporting requirements likewise did "not require him to live or be anywhere, either." *Id.* at 1246. Although "a residency approval requirement could in some particularly inhibiting circumstances create a severe or significant restraint on an offender's physical liberty," it found the conditions imposed on Munoz did not rise to

> that level. *Id.* This case falls within precisely the area distinguished by *Munoz*: the electronic monitoring targets Petitioners' movements to ensure that they appear as demanded at frequent check-ins and prevents Petitioners from going outside Northern California, without any articulated basis in public safety or connection to a criminal conviction. *Harrington*, 2026 WL 800113, at *5. As such, the majority of district courts have read *Munoz* as reinforcing the conclusion that the restrictions at issue are custodial. *See, e.g., id.*
>
> This Court finds the majority view more persuasive. Conditions compelling a person's physical presence at a given place and time are frequently deemed custodial by the Ninth Circuit. *See, e.g., Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist., Santa Clara Cnty., California*, 411 U.S. 345, 351 (1973) ("[P]etitioner is in custody for purposes of the habeas corpus statute.... He cannot come and go as he pleases. His freedom of movement rests in the hands of state judicial officers, who may demand his presence at any time and without a moment's notice."). In *Means v. Navajo Nation*, for example, the Ninth Circuit found that a petitioner was in custody where he was required to discontinue contact with their former father-in law, stay at least 100 yards away from the former father-in-law's home, and "appear as ordered by the Navajo trial court or face re-arrest and additional punishment for any failure to appear." 432 F.3d 924, 928 (9th Cir. 2005). In *Dow v. Circuit Court of the First Circuit Through Huddy*, the Ninth Circuit held that a sentence requiring 14 hours of attendance at an alcohol rehabilitation program rendered the person "in custody" because it required the person's "physical presence at a particular place," and thus "significantly restrain[ed his] liberty to do those things which free persons in the United States are entitled to do and therefore must be characterized, for jurisdictional purposes, as 'custody.'" 995 F.2d 922, 923 (9th Cir.1993). Where custody has not been found, it is generally because the challenged constraints "lack the discernible impediment to movement that typically satisfies the 'in custody' requirement." *Williamson v. Gregoire*, 151 F.3d 1180, 1184 (9th Cir. 1998).
>
> Here, the conditions imposed upon Petitioners discernably impede their freedom of movement. Petitioners were not fitted with ankle monitors in isolation. They were given ankle monitors to enforce ISAP's physical check-in requirements and associated movement restrictions. It is the "combined effect" of these measures—not the mere fact of ankle monitoring—that targets Petitioners' movement and renders the monitoring custodial. *Munoz*, 17 F.4th at 1244. Petitioners' request to remove the ankle monitors thus targets the fact and duration of their custody, even if Petitioners would otherwise be willing to attend check-ins and remain within Northern California. Habeas is properly requested in this circumstance.

*M.A.M.G.*, 2026 WL 2547047, at *4–5 (emphasis in original); *see also Hogarth v. Santacruz*, No. 5:25-cv--09472-SPG-MAR, 2025 WL 3211461 (C.D. Cal. Oct. 23, 2025) (determining conditions of release that included "electronic monitoring" and "multiple check-ins with ICE every month"

were "sufficient to demonstrate that [the petitioner] is in custody"). The undersigned finds the analysis set forth by the district court in *M.A.M.G* to be entirely persuasive and adopts that analysis here. Accordingly, respondents' argument that petitioner was released from custody following this court's May 30, 2026, order despite the imposition of electronic monitoring and reporting requirements is rejected.

Because respondents failed to release petitioner from custody as required by the court's May 28, 2026 order, petitioner's motion to enforce that order will be granted. *See Solis v. Noem*, No. 2:26-cv-000053-RFB-EJY, 2026 WL 776981, at *1 (D. Nev. Mar. 19, 2026) (granting motion to enforce judgment where immigration officials imposed conditions similar to those imposed here on a petitioner after being ordered to release that petitioner on his own recognizance). In light of the granting of petitioner's motion to enforce judgment, petitioner's pending motions for the issuance of a temporary restraining order and for an immediate determination on his motion to enforce judgment (Doc. Nos. 14, 15), as well as respondent's motion for clarification to the court's May 2026 order will be denied as having been rendered moot.[3]

Therefore:

1. Petitioner's motion to enforce the judgment (Doc. No. 12) is GRANTED as follows:
    a. Respondents shall immediately release petitioner from their custody and remove any ankle monitor and check-in via the Intensive Supervision Appearance Program conditions previously placed on his release from custody;
    b. Respondents are ENJOINED from imposing any new or more restrictive restraints on petitioner's liberty interest without notice and a pre-deprivation hearing before an immigration judge;

/////

[3] Because it has determined that respondents did not comply with its order to release petitioner from custody, the court need not reach respondents' other argument that petitioner's re-detention was lawful because it did not relate to his involvement in adjustment of status proceedings.

2. In light of this order, petitioner's motions for a temporary restraining order and for an immediate determination on his motion to enforce judgment (Doc. Nos. 14, 15) are DENIED as moot;

3. Respondent's motion for clarification (Doc. No. 20) is DENIED in light of this order granting petitioner his immediate release from immigration custody;

4. The Clerk of the Court shall serve a copy of this order on the Warden for the Adelanto Detention Facility; and

5. The Clerk of the Court is directed to once again close this case.

IT IS SO ORDERED.

Dated: **November 25, 2026**

Dale A. Drozd

DALE A. DROZD
UNITED STATES DISTRICT JUDGE